# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 3904 | **DATE** | 5/5/2000 |
| **CASE TITLE** | UNITED STATES vs. JOB RESOURCES, etal | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted/denied in part. The claim for unjust enrichment is dismissed.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

DW — courtroom deputy's initials

number of notices

MAY 0 9 2000
date docketed

docketing deputy initials

date mailed notice

00 MAY -8 PM 12:52

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

35

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

JOB RESOURCES FOR THE DISABLED,
*et al.,*

        Defendants.

No. 97 C 3904
Judge James B. Zagel

**DOCKETED**

MAY 0 9 2000

## MEMORANDUM OPINION AND ORDER

"Men must turn square corners when they deal with the government," the saying goes. *Rock Island, A. & L.R. Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 56 (1920) (Holmes, J.). In this case, the government alleges that defendants' failure to turn a square corner exposes them to treble damages under the False Claims Act. 31 U.S.C. § 3729.[1]

The Job Training Partnership Act (JTPA), 29 U.S.C. §§ 1501-1781, allocates its admirable goals among federal, state and local governments. State agencies administer job training programs for disadvantaged or dislocated workers in return for federal funding. Local government units act as service delivery areas for the state agencies and are responsible for program management. In Illinois, the Department of Commerce and Community Affairs is responsible for administering JTPA

---

[1] Venerable maxims will move this case only so far, especially since False Claims Act cases are heavily dependent on their facts. Indeed, the Seventh Circuit has noted the need to recite facts "in unfortunate detail." *Hindo v. University of Health Sciences/The Chicago Medical School,* 65 F.3d 608, 610 (7th Cir. 1995).

1

programs, and local management in Chicago falls upon the Mayor's Office of Employment and Training (MET).

Founded by defendant Michal Rooney in 1980, Job Resources for the Disabled (JRD) is a private, not-for-profit organization. Defendant Daniel Sullivan is Rooney's betrothed and JRD's Executive Director. In 1990, when Sullivan was its Chief Operating Officer, JRD entered into contracts with MET to provide on-the-job training (OJT) services and to place individuals with employers. The JTPA provides for employers to receive a reimbursement for up to 50 percent of the wages paid to people placed through on-the-job training programs. 29 U.S.C. § 1551(g); 20 C.F.R. § 627.240(c).[2] In theory, JRD was supposed to act as a middleman between employers and the federal funds. It was to place employees with employers, pay the employers the wage reimbursement, and receive its own reimbursement for these wages from federal funds via MET. The dispute in this lawsuit is over how and when the transactions for wage reimbursement were supposed to occur.

The government says JRD could submit vouchers for wage reimbursement only after JRD first paid employers. This requirement is found in JRD's contracts with MET. Contracts D0952900540 ("540") and D0952900526 ("526") both contain a provision which states: "[a] MET/OJT contractor will be reimbursed for OJT wages paid to an employer only *after* documentation is provided that the

---

[2] The statute and regulations create an incentive for employers to hire people trained through JTPA programs. Although these employees, as recent trainees, may be associated with lower productivity, the employer can receive up to half its money back.

employer has been paid these wages."[3] Local Rule 56.1 Statement, Exh. A at 72-73 & Exh. B at 58-59 (emphasis in original). Both contracts cover the period July 1, 1990 through June 30, 1991.

The reimbursement process involved JRD submitting documentation to MET. JRD submitted the required MET reimbursement voucher forms, supported by invoices and employee time sheets. MET reviewed the package and certified the voucher's eligibility for payment. The voucher moved up to the Chicago Comptroller's Office for payment authorization. The Comptroller's Office then sent a check or wire transfer to JRD.

Under Contract 540, JRD submitted eleven vouchers for reimbursement.[4] A typical voucher, Number 35A, requests $4,288.85 in employer reimbursements. The form identifies eight OJT participants, the hours worked, the hourly OJT cost and the total OJT cost and is signed by the employer. The complete voucher packet contains a certification that all employees listed were JTPA eligible, that the amount claimed had not been previously paid (by MET to JRD) and that all expenditures were within budgeted amounts. Daniel Sullivan signed the certifications on behalf of JRD. Under Contract 526, JRD submitted seven reimbursement vouchers.[5] Voucher Number 24A, typical of this batch, identifies 29 employees for whom JRD claimed wage reimbursements totaling $26,219.10. Sullivan signed the reimbursement voucher and Rooney signed the voucher itemizing

---

[3] The parties have an evidentiary squabble over whether Contract 526 contains this provision. Defendants say the copy of the contract used in certain depositions did not have this clause. The government says it learned of the incomplete document being used during discovery and did locate and produce the complete contract which has the clause. Defendants are willing to assume for purposes of this motion that Contract 526 has the clause, therefore I assume it does as well.

[4] The vouchers, signed by Sullivan, are numbered 32A, 35A, 36A, 37A, 38A, 39A, 40A, 62Y, 63A, 64A and 70Y.

[5] These vouchers are numbered 24A, 28A, 30A, 31A, 32A, 34A and 36A.

the individual employees and OJT costs. *See* Local Rule 56.1(a) Statement, Exh. F at Bates Nos. 129, 131.[6]

The parties agree that MET approved approximately $75,000 in reimbursement vouchers and that JRD reimbursed employers with approximately $5,000. This leaves about $70,000 which the government identifies as damages. JRD says that although the reimbursement money was approved, it did not receive all of it. The government agrees that JRD actually received only $58,742.37 earmarked for reimbursement vouchers. This lower amount is relevant, according to the government, to its alternative claim for unjust enrichment, not to its False Claims Act claim which is based on the amount claimed, not the amount actually paid.[7] The parties agree that most employers did not receive their reimbursements, either before or after MET paid JRD. Around the time defendants received the money from the City, JRD purchased computers and paid other operational expenses (including JRD salaries), but did not reimburse employers.[8]

The government's case boils down to this: by contract, JRD was supposed to reimburse employers before submitting vouchers, it did not do this, therefore it (and Rooney and Sullivan) violated the False Claims Act and the government is entitled to summary judgment. There are three elements to an FCA violation: (1) the defendants made a claim in order to get the government to pay

---

[6] JRD says Rooney did not sign any of these vouchers, suggesting perhaps that Rooney had nothing to do with these submissions, but I find that she did in fact sign forms in support of vouchers 24A and 36A. *See* Local Rule 56.1(a) Statement, Exh. F at Bates Nos. 131-133, 308.

[7] The government's view on damages is not entirely correct. While defendants may be liable for all eighteen vouchers, regardless of whether the claims were paid, the amount of the government's recovery might be dependent on actual damages. Unlike the statutory penalty, the treble damages provision is tied to actual damages. 31 U.S.C. § 3729(a).

[8] The parties dispute whether the purchase of computers was an approved expenditure, but I find that this after-the-fact use of monies is not material to the issue presented -- were the claims for employer reimbursement false?

money; (2) the claim was false or fraudulent; and (3) the defendants knew it was false or fraudulent. *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999). The defendants say the government's motion is out of line; they are the ones entitled to summary judgment. According to them, there is no way the claims here were false, and even if they were, the defendants did not "know" they were false.

Defendants agree that the eighteen vouchers are claims within the ambit of the FCA, so the first question is: are the vouchers false? To be false, "the claim must be a lie." *Hindo v. University of Health Sciences/The Chicago Medical School*, 65 F.3d 608, 613 (7th Cir. 1995). Each voucher contains a certification by JRD that the employees were JTPA eligible, that the money had not been claimed before, and that the money was within budgeted amounts. None of these representations relates to payment of employers prior to submitting vouchers. Nor do the vouchers contain a general certification of contractual compliance. *See U.S. ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 330 (9th Cir. 1995). My review of the vouchers reveals no false statement contained in them. For the government to succeed on this element, the falsehood must be somehow implied in the claims, and I "must look then for some purposeful scheme by the [defendants] to defraud... the government." *Hindo*, 65 F.3d at 613. Here the falsity element becomes entwined with the requirement of some scienter. *Lamers*, 168 F.3d at 1018.

The government can prevail if JRD fraudulently omitted material information from its vouchers, *i.e.*, if JRD fraudulently concealed the fact that it had not paid employers first. *See United States v. Frierson*, 1997 WL 136280 at * 9 (N.D. Ill. 1997); *United States v. TDC Management*

*Corp., Inc.*, 24 F.3d 292, 296 (D.C. Cir. 1994).[9] Defendants must have acted, at least, with reckless disregard toward their submissions to have the required mental state for liability. 31 U.S.C. § 3729(b)(3).

JRD essentially admits it submitted the vouchers in breach of the contracts -- it admits it did not pay employers before seeking reimbursement from MET.[10] Defendants say their accounts were a mess; that MET was slow to pay, if it paid at all; and that cash flow problems prevented them from paying employers first. They maintained one general bank account through which funds came and went; this pot of fungible money was sloppy, not fraudulent, they say. I accept defendants' portrayal of their accounting methods and can draw only one conclusion -- they were reckless. Defendants' arguments that record-keeping was too hard and that their hearts were in the right place do not alter the facts. By cavalierly disregarding fundamental accounting practices and contractual obligations, the defendants opted to create a slush fund, with the hopes that everything would sort itself out in the end. This is a far cry from turning a square corner.

That said, defendants' scheme was not fraudulent if the omission was not material. MET never asked JRD if it had paid employers first and the MET forms do not require a certification that JRD complied with the contract. At first blush, it would seem that MET didn't care if employers had been paid or not -- MET didn't ask. Perhaps this argument ignores the baseline presumption under which the agencies operated. For example, Confesor DeJesus, City of Chicago Deputy Comptroller,

---

[9] The materiality requirement is a judicially created element that I find to be particularly appropriate when considering a lie of omission. *See U.S. ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1459 (4th Cir. 1997) (imposing materiality element to False Claims Act in general); *Lamers*, 168 F.3d at 1019 (citing *Berge* with approval).

[10] I find the contracts to be unambiguous on this point. Both state, with emphasis, that JRD can request reimbursement only after reimbursing employers directly. That the contracts do not restate this requirement in another section of the agreements does not make that term ambiguous. Saying it once is enough.

testified that by definition, a "reimbursement" voucher means the expense has already been paid, "because if I pay for something that you didn't pay, that's not a reimbursement." Plaintiff's Local Rule 56.1 Response to Additional Facts, Confesor DeJesus Dep. at p. 31. This suggests that from the City's perspective, whether the employers had been paid (as required by contract) was material. DeJesus also testified, however, that the City of Chicago was supposed to check the contract to make sure JRD's vouchers were appropriate. Defendant's Local Rule 56.1 Statement of Additional Facts, Exh. N at p. 28. The City was supposed to look for evidence of payment in the voucher materials, such as a canceled check from JRD to the employer. *Id.* at p. 30. JRD never submitted evidence of prepayment (because it never prepaid) and JRD always passed through the system. The government argues that at most this demonstrates contributory negligence on the part of the local authorities. Generally, the government's failure to inspect and discover fraudulent claims is not a defense to the False Claims Act. *United States v. Advance Tool Company*, 902 F. Supp. 1011, 1016 (W.D. Mo. 1995). Here, however, the repeated ability of JRD to pass through the reimbursement system without being asked the most basic question, and without any certification required on the forms, raises a factual issue as to the materiality of the omission. In the end, it may be that the City does care about reimbursements meaning what they say and its sloppy work does not change the importance of defendants' implied representation that they are honoring the terms of their agreement. But this record does not make that point clear; a jury would not be compelled to find defendants' omissions material.

I find that the contracts required JRD to pay employers before seeking reimbursement from MET. I also find that JRD recklessly disregarded this fact when submitting its vouchers. I cannot

find on this record, however, that failing to inform MET about the breach was a material omission. Therefore I deny the parties' cross motions for summary judgment on the False Claims Act.

Alternatively, the government moves for summary judgment on its claim of unjust enrichment. A party cannot recover on a quasi-contract theory when a real contract governs the parties' relations. *Murray v. ABT Associates, Inc.*, 18 F.3d 1376, 1379 (7th Cir. 1994). Defendants say the JRD-MET contract therefore precludes quasi-contractual recovery. But this contract does not govern the relationship between the federal government and JRD, it merely provides the baseline for determining the falsity and scienter behind the fraud. Therefore, the contract itself is not a bar to an unjust enrichment recovery.

Defendants win on another theory. Equitable remedies are only appropriate if no adequate legal remedy exists. I find the False Claims Act to be an adequate legal remedy to protect the federal government's interests (whether the claim prevails in the end or not, it is adequate). *See United States v. Hydroaire, Inc.*, 1995 WL 86733 at * 6 (N.D. Ill. 1995) (FCA is among adequate legal remedies).

## CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is denied in part and granted in part. The claim for unjust enrichment is dismissed.

ENTER:

James B. Zagel
United States District Judge

DATE: **MAY 05 2000**

8